# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA

RONALD GIGLIOTTI,              )
                                   )
        Plaintiff,              )
                                   )
        v.                    )         CAUSE NO.: 3:09-CV-256-TS
                                   )
AERO METALS, INC.,            )
                                   )
        Defendant.       )

## OPINION AND ORDER

On June 10, 2009, the Plaintiff, Ronald Gigliotti, filed a Complaint [DE 1] against the

Defendant, Aero Metals, Inc. (Aero), alleging that the Defendant violated the Age Discrimination

in Employment Act of 1967 (ADEA) when it terminated his part-time employment in March

2008. After a period of discovery, the Defendant filed its Motion for Summary Judgment [DE 17]

along with a memorandum in support on March 1, 2010. The Plaintiff filed his Brief in

Opposition to Defendant's Motion for Summary Judgment [DE 22] on April 13, 2010. The

Defendant filed its Reply Brief in Support of Motion for Summary Judgment [DE 23] on April

27, and the Motion is now ripe for ruling.

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure provide that motions for summary judgment should

be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits

show that there is no genuine issue as to any material fact and that the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when

"'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that

party.'" *AA Sales & Assocs. v. Coni-Seal, Inc.*, 550 F.3d 605, 608–09 (7th Cir. 2000) (quoting

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)). Under Rule 56(e)(2), a party

opposing a properly made and supported motion for summary judgment "may not rely merely on

allegations or denials in its own pleading; rather its response must—by affidavits or as otherwise

provided in this rule—set out specific facts showing a genuine issue for trial." If appropriate,

summary judgment should be entered against a party who fails to so respond. Fed. R. Civ. P.

56(e)(2); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (holding that a court should

enter summary judgment, after adequate time for discovery, against a party "who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial"). A court's role on summary judgment is

not to weigh the evidence, make credibility determinations, or decide which inferences to draw

from the facts, but instead to determine whether there is a genuine issue of triable fact. *Anderson,*

477 U.S. at 255; *Washington v. Haupert*, 481 F.3d 543, 550 (7th Cir. 2007); *Payne v. Pauley*, 337

F.3d 767, 770 (7th Cir. 2003). "Summary judgment cannot be used to resolve swearing contests

between litigants." *Payne*, 337 F.3d at 770 (citing cases). Thus, a court in ruling on a summary

judgment motion construes all facts in the light most favorable to the nonmoving party and draws

all reasonable inferences in that party's favor. *AA Sales & Assocs.*, 550 F.3d at 609. However, the

court is not required to draw every conceivable inference from the record—only reasonable ones.

*Spring v. Sheboygan Area Sch. Dist.*, 865 F.2d 883, 886 (7th Cir. 1989).

      The rule governing summary judgment requires that a supporting or opposing affidavit "be

made on personal knowledge, set out facts that would be admissible in evidence, and show that the

affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1). On a motion for

summary judgment, a court must not consider parts of an affidavit that fail to comply with Rule

56(e). *Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 429 (7th Cir. 2004); *Friedel v. City of*

*Madison*, 832 F.2d 965, 970 (7th Cir. 1987). The following statements do not comply and should

be disregarded: (1) conclusory allegations lacking supporting evidence; (2) legal argument; (3)

self-serving statements without factual support in the record; (4) inferences or opinions not

grounded in observation or other first-hand experience; and (5) mere speculation or conjecture.

*Heltzel v. Dutchmen Mfg., Inc.*, No. 3:06-CV-227, 2007 WL 4556735, at *4 (N.D. Ind. Dec. 20,

2007) (quotation marks and citations omitted). Although "self-serving statements in affidavits

without factual support in the record carry no weight," *Butts v. Aurora Health Care, Inc.*, 387 F.3d

921, 925 (7th Cir. 2004) (emphasis omitted), "a self-serving affidavit supported by facts in the

record [can] defeat summary judgment," and the record "may include the self-serving affidavit

itself, provided that the affidavit meets the usual requirements for evidence on summary

judgment—including the requirements that it be based on personal knowledge and that it set forth

specific facts showing that there was a genuine issue for trial," *Buie v. Quad/Graphics, Inc.*, 366

F.3d 496, 504 (7th Cir. 2004) (quotation marks and citations omitted). If it meets these

requirements, "a self-serving affidavit is an acceptable method for a non-moving party to present

evidence of disputed material facts." *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003); *see also*

*U.S. Gypsum Co. v. LaFarge N.A., Inc.*, 508 F. Supp. 2d 601, 626 (N.D. Ill. 2007) ("Most

affidavits and much testimony are self-serving. Like any other testimony, self-serving testimony is

to be accepted on summary judgment as long as it is based on personal knowledge, sufficiently

specific, not disputed by contrary evidence of the nonmovant, and in compliance with any other

evidentiary criteria applicable to the particular testimony.").

**STATEMENT OF FACTS**

In determining which facts this Court should rely upon in ruling on the Defendant's

Motion for Summary Judgment, the Court considers the requirements of Northern District of

Indiana Local Rule 56.1. This Rule provides that the party responding to a motion for summary

judgment must include a statement of genuine issues that sets forth, together with appropriate

citations to designated evidence, all material facts as to which it is contended there exists a

genuine issue necessary to be litigated. Failure to do so results in the Court accepting as true all

properly supported facts presented in the moving party's statement of material facts. N.D. Ind.

L.R. 56.1(b). The facts before the Court primarily consist of the Defendant's Local Rule 56.1

Statement of Undisputed Material Facts [DE 19], which are adequately supported with

appropriate citations to admissible evidence.  The Statement of Genuine Issues in the Plaintiff's

response brief does not contain a narrative recitation of the facts. Rather, it is composed of six

paragraphs, citing evidence in the record, that note his points of contention with the Defendant's

Statement of Undisputed Material facts. To the extent that they are uncontroverted, the facts

alleged by the Defendant will be accepted as true. To the extent that the Plaintiff presents

supported contradictory facts, they will be construed in a light most favorable to the Plaintiff.

The relevant facts are as follows:

Aero is a business based in LaPorte, Indiana, that manufactures and supplies cast

components. The company currently employs 291 people. James Fleming is the President and

Chief Executive Officer of Aero, as well as one of its owners. Linda Stowell is Aero's Vice-

President of Finance, and has worked in this position since being hired in 2007.

The Plaintiff, whose date of birth is June 22, 1938, was hired in 1988 as a full-time

salaried employee of Aero who worked 40-45 hours per week. Though he was never given a formal title, it was the Plaintiff's practice to refer to himself as Aero's "Environmental Manager." In 1998 or 1999, the Plaintiff, at the request of Fleming, created a job description for himself. In this description, the Plaintiff listed four primary areas of responsibility: (1) environmental, (2) customers, (3) government reports, and (4) industrial surveys and reports. In addition to duties related to those areas, the Plaintiff occasionally assumed responsibility for some health and safety issues when employees otherwise charged with those responsibilities became overwhelmed. The Plaintiff also attended Safety Committee Meetings. To assist him with his environmental responsibilities, he hired D&B Environmental Services (D&B), an outside consultant. He also contracted with TestAmerica Laboratories (TestAmerica) to test and analyze wastewater samples. Finally, the Plaintiff was assisted in his responsibilities by Ron Weszely, President of Valparaiso Safety Environmental Consultants, who worked with Aero two days a week.

In October 2004, the Plaintiff made a request to become a part-time employee because he believed he had the financial means to work less hours and make less money. As a part-time employee, the Plaintiff worked for 20–25 hours per week and performed the following tasks for Aero: (1) daily monitoring for compliance with air emissions and hazardous waste storage/disposal standards; (2) monitoring and maintaining permits for wastewater and air emissions; (3) researching federal, state, and local environmental laws and regulations, environmental compliance audits, and norms for naturally occurring radioactive materials; (4) entering Material Safety Database Sheets (MSDS) into an electronic database; (5) assisting in the submission of annual environmental reports to federal, state, and local regulatory bodies; and (6) providing customers with MSDS and other environmental information. As a part-time employee,

5

the Plaintiff continued to use D&B to prepare documentation and draft revisions to environmental permits, and to prepare annual air emission reports required by the state of Indiana.

In his part-time role, the Plaintiff also had several reporting responsibilities. He assisted in the monthly submission of the Produced Price Index to the United States Department of Labor, assisted in Aero's annual submission of the Annual Survey of Manufacturers to the United States Department of Commerce, assisted in the annual submission of the Commodity Flow Survey to the United States Department of Commerce, assisted in the annual submission of a report to the United States Department of the Interior regarding iron and steel scrap and pig iron, and provided sporadic assistance in submitting various other reports to the United States Department of Commerce.

Beginning in October 2007, Fleming tasked Stowell with creating and executing a plan to reverse Aero's operating losses. To this end, in November 2007, Stowell began appraising Aero's environmental and safety operations and expenditures. Stowell made note of the decentralized nature of the safety operations: those with responsibilities included the Plaintiff, employees on the safety committee, D&B, Ron Weszely, TestAmerica, and Safeco Insurance Company (Safeco), Aero's workers' compensation insurance carrier.

In March 2008, Stowell asked the Plaintiff to create a time record of all his activities over a one-week period. The report indicated that the Plaintiff allocated the majority of his time to the following daily activities: (1) one hour per day entering MSDS into an electronic database; (2) one hour per day conducting technical research relating to OSHA and environmental regulatory compliance; (3) approximately 30–40 minutes per day conducting a safety walk-through; and (4) 30 minutes per day downloading a production report and entering it into a database.

6

In March 2008, Stowell reported to Fleming that the Plaintiff's position did not provide Aero sufficient value to justify the expense of employing him. Specifically, Stowell noted that the Plaintiff spent an hour every day researching general technical issues and regulatory developments in OSHA and environmental compliance, responsibilities that Aero could have obtained from D&B. Stowell also pointed out that the maintenance of the MSDS database could be eliminated and replaced with a hard copy storage system. Shortly after receiving Stowell's report, Fleming decided to terminate the Plaintiff's employment. He did so on March 29, 2008. He was the only employee to have his employment terminated in the calendar year of 2008, but 79 additional employees (out of a total of 390) were laid off in January 2009.

Sometime in "early 2007 or early 2008," the Plaintiff had approached Aero Vice President Robert Stowell[1] and asked him for a pay increase. Mr. Stowell denied this request and told the Plaintiff that he already "was one of the highest paid employees at Aero Metals."

Following the termination, some of the Plaintiff's former responsibilities were assumed by Jeff Johnson, a 52-year-old employee of Aero, who is a 21-year veteran of the company. Johnson currently spends 12 to 16 hours per month entering data previously entered by the Plaintiff, monitoring the disposal of hazardous waste, monitoring the MSDS catalog, and assisting D&B in the submission of environmental and OSHA reports and permits to government agencies. Johnson received no special training to assume these duties, and has not received a promotion.

## ANALYSIS

**A.     ADEA Standards**

---

[1] The Court is not aware of whether Mr. Stowell and Mrs. Stowell are related.

Under the ADEA, it is unlawful for an employer to "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).[2] A plaintiff may prove discrimination under the ADEA using either the "direct method" or the "indirect method." *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1060 (7th Cir. 2003). "[W]hether a plaintiff proceeds under the direct or indirect method of proof, the ultimate standard is the same: the plaintiff must demonstrate that the employer would not have made the adverse employment decision in question but for his membership in a protected class." *Id.* at 1061–62.

Under the direct method of proof, a plaintiff will survive summary judgment by showing sufficient evidence from which a jury could find that the employer took the adverse employment action for a discriminatory reason. *Jones v. City of Springfield, Ill.*, 554 F.3d 669, 671 (7th Cir. 2009). A plaintiff may rely on either direct or circumstantial evidence that the adverse employment action was motivated by discriminatory purpose. *Nichols v. S. Ill. Univ.-Edwardsville,* 510 F.3d 772, 781 (7th Cir. 2007). Direct evidence is evidence that, if believed by the trier of fact, would prove discriminatory conduct on the part of the employer without reliance on inference or presumption. *Rogers v. City of Chi.*, 320 F.3d 748, 753 (7th Cir. 2003). In short, "[d]irect evidence essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus." *Id.* A plaintiff may also satisfy his burden under the direct method "by constructing a convincing mosaic of circumstantial evidence" that allows a jury to

---

[2] The ADEA follows the same legislative pattern as Title VII, *EEOC v. Elrod*, 674 F.2d 601, 607 (7th Cir. 1982), and courts "employ essentially the same analytical framework to employment discrimination cases whether they are brought under the ADEA [or] Title VII," *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1060 n.4 (7th Cir. 2003).

infer intentional discrimination by the decisionmaker. *Phelan v. Cook County,* 463 F.3d 773, 779

(7th Cir. 2006). That circumstantial evidence, however, "must point directly to a discriminatory

reason for the employer's action." *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir.

2003).

      If a plaintiff cannot prevail under the direct method of proof, he must proceed under the

indirect method of proof. Under the familiar *McDonnell Douglas* burden-shifting framework, a

plaintiff can make out a *prima facie* case of discrimination under the indirect method by showing

that (1) he is a member of a protected class; (2) his performance met his employer's legitimate

expectations; (3) despite this performance, he was subjected to adverse employment action; and

(4) his employer treated similarly situated employees outside of the protected class more

favorably. *Barricks v. Eli Lilly and Co.*, 481 F.3d 556, 559 (7th Cir. 2007) (citing *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973)). As applied to ADEA discrimination

claims, the Seventh Circuit has advised that the fourth prong of *McDonnell Douglas* need not be

rigidly applied. Rather than requiring that a plaintiff prove that his employer treated similarly

situated employees outside of the protected class (persons under 40 years old) more favorably, it

is sufficient for the plaintiff to prove that he was replaced with a person "substantially younger . .

. [which] indicates that it is more likely than not that his age . . . was the reason for the

discharge." *Olson v. Northern FS, Inc.*, 387 F.3d 632, 635–36 (7th Cir. 2004). *See also*

*O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 313 (1996) ("[T]he fact that a

replacement is substantially younger than the plaintiff is a far more reliable indicator of age

discrimination than is the fact that the plaintiff was replaced by someone outside the protected

class."). If the employee establishes this *prima facie* case, the burden shifts to the employer to

"articulate a legitimate, non-discriminatory reason for its action." *Barricks*, 481 F.3d at 559. If

the employer does so, the employee then has the burden to prove that the reason for its action

was a mere "pretext for discrimination." *Id.*

**B.  Direct Method of Proof**

In the Plaintiff's Brief in Opposition [DE 22], he does not contend that there is any direct

evidence that would support a finding of discrimination. Nor could he. There is no evidence in the

record that approaches an "admission by the decision-maker that his actions were based upon the

prohibited animus." Rather, the Plaintiff alleges that Aero's actions "suggest discrimination

through a longer chain of inferences." Although the Plaintiff's brief is confusing as to his precise

argument under the direct method, he seems to argue that the facts that a younger employee,

Johnson, assumed his job responsibilities after he was fired, that he was the only employee

discharged in 2008, and that he was fired shortly after he was denied a raise, combine to form a

convincing mosaic that supports his conclusion that his firing was in violation of the ADEA.

However, the Court does not find that this evidence, taken collectively, would allow a jury to infer

intentional discrimination by the decisionmaker.

The Court first notes that although Johnson is younger than the Plaintiff, he assumed only a

fraction of the Plaintiff's responsibilities after his firing. At the time of his employment's

termination, the Plaintiff had been working 20–25 hours per week on environmental, health, safety,

and reporting functions. The uncontested evidence shows that Johnson assumed a portion of the

Plaintiff's *environmental* duties only. More significantly, the uncontested evidence shows that

Johnson spends 12–16 hours per month performing the Plaintiff's former environmental duties, a

mere fraction of the approximately 100 hours per month that the Plaintiff spent working as a part-time employee. As such, the Court finds little merit in the Plaintiff's contention that his "replacement" points directly at any type of discriminatory animus.

Second, the Court finds that the fact that the Plaintiff was the only employee fired in 2008 does not "point directly to a discriminatory reason for the employer's action." The uncontested evidence shows that the Defendant took many steps to cut costs around the time of the Plaintiff's firing including: (1) the elimination of the human resources manager position in October 2007; (2) the restructuring of vendor contracts to obtain lower prices, beginning in October 2007; (3) reduced hours for production employees in 2008, followed by an additional reduction in 2009; (4) a wage cut taken by Fleming in 2008; and, as noted before, (5) the layoff of more than 20% of Aero's workforce in January 2009. These facts do not support an inference of any discriminatory intent; rather they support a commonsense inference that the Plaintiff's termination was but one in a series of Aero initiatives to lower its operating costs.

Finally, the Court is unpersuaded by what the Plaintiff alleges is the suspicious timing of his employment termination after Robert Stowell denied his request for a pay raise. Indeed, "close temporal proximity provides evidence of causation, and may permit a plaintiff to survive summary judgment provided that there is other evidence that supports the inference of a causal link." *Lang v. Ill. Dep't of Children & Family Servs.*, 361 F.3d 416, 419 (7th Cir. 2004). "Suspicious timing is plausible when events occur over weeks or months perhaps, but not once per year with no other supposed discrimination occurring in between." *Uhl v. Zalk Josephs Fabricators, Inc.*, 121 F.3d 1133, 1136 (7th Cir. 1997). The Plaintiff cannot establish close temporal proximity in this case for the simple reason that he cannot remember whether his conversation with Robert Stowell occurred

in early 2007 or early 2008. However, assuming *arguendo* that the conversation took place in early 2008 and thus a month or two before the Plaintiff was fired, there is still not enough evidence to support a jury finding that the comment was age related. The comment—that he "was one of the highest paid employees at Aero Metals"— was made in response to the Plaintiff's request for a pay raise. It therefore would seem to relate only to the Plaintiff's rate of compensation as compared to the rates of his co-workers, and thus supports the Defendant's position that the company was trying to cut costs.

Taken individually and collectively, these arguments do little to further the Plaintiff's position and cannot be found to "point directly to a discriminatory reason for the employer's action." The Plaintiff has failed to produce a "convincing mosaic" of evidence that supports a finding of discrimination and there is thus not sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party under the direct method of proof.

## C.    Indirect Method of Proof

### 1.    *Prima Facie* Case

In going through the *McDonnell Douglas* analysis, the Defendant concedes that the Plaintiff: (1) is over 40 years old and thus a member of a protected class; (2) was meeting his employer's legitimate job expectations; and (3) suffered an adverse employment action. As to the fourth prong of the *McDonnell Douglas* test, the Defendant acknowledges that Johnson is substantially younger than the Plaintiff. Therefore the *prima facie* stage of the analysis turns on whether Johnson replaced the Plaintiff after his job was terminated. The Court finds that he did not.

As discussed earlier, the undisputed evidence shows that Johnson spends less than 4 hours

per week performing job functions formerly performed by the Plaintiff. The undisputed evidence

also shows that the Plaintiff's job responsibilities were absorbed by several Aero employees or

outside entities—not by a single person as the Plaintiff contends. The Defendant has presented

uncontradicted evidence that since the Plaintiff's termination, Johnson has retained the job title that

he held before the termination. He has neither received additional training nor a promotion.

> To refute the Defendant's argument, the Plaintiff points to his own affidavit and contends,
>
>> The basis for [the Plaintiff's] opinion that he was replaced by Jeffery Johnson were
>> statements made to him by Ron Wezsely, a friend and former Aero consultant, and
>> Harvey King, Aero's purchasing manager. Wezsely told [the Plaintiff] that he had
>> seen Johnson sitting at [the Plaintiff's] desk doing some of his former
>> responsibilities. King told [the Plaintiff] that he saw Johnson at [the Plaintiff's] desk
>> every day.

(Pl.'s Resp. at 8). The Court reiterates that in evaluating a motion for summary judgment, it may

only review affidavit evidence that is made on personal knowledge. In this case, the Court is not in

possession of an affidavit of Wezsely or King. Nor did the Plaintiff or any other affiant testify to

seeing Johnson perform any of the Plaintiff's former responsibilities, or sitting at the Plaintiff's

desk.[3] Therefore it cannot consider the Plaintiff's self-serving contention that he heard from

another person who has not submitted testimony that Johnson had replaced him. Absent this

evidence, the Court finds that the Plaintiff has not met his burden of making a *prima facie* case.

Because the Court has already found that the Plaintiff cannot survive summary judgment under the

direct method, this analysis is enough to enter summary judgment in favor of the Defendant.

However, the Court will continue in the alternative, addressing the Plaintiff's claim under the

---

[3] Because the Court cannot consider the proffered evidence, it will not assess the merits of basing an ADEA discrimination claim on the fact that Johnson allegedly sat at the Plaintiff's desk after the Plaintiff was fired.

remainder of the *McDonnell Douglas* framework.

### 2. Legitimate Non-Discriminatory Reason

If the Court had found that the Plaintiff made a *prima facie* case, the burden would have

shifted to the Defendant to "articulate a legitimate, non-discriminatory reason for its action." The

Court finds that the Defendant has met that burden. Again, the Plaintiff's firing was effectuated as

part of a years-long initiative to assess and lower Aero's operating costs. Since his departure, the

Plaintiff's job responsibilities have been performed by Aero employees and external entities,

apparently at little or no additional cost to Aero. The Court finds that a need to reduce operating

costs, combined with the fact that the Plaintiff's job was not essential to Aero's continued

operations, is a legitimate, non-discriminatory reason for discharging the Plaintiff.

### 3. Pretext

Because the Court has found that the Defendant has articulated a legitimate, non-

discriminatory reason for terminating the Plaintiff's employment, the burden shifts to the Plaintiff

to prove that the reason for its action was a mere "pretext for discrimination." The Plaintiff has

not done so. In stating his case that the Defendant's need to cut operating costs is a mere pretext for

discriminating against him based on age, the Plaintiff primarily relies upon argument that he was

performing his job well. He states that he "disputes Linda Stowell's contentions that the Safety

Committee was ineffective and disorganized under his leadership." (Pl.'s Resp. at 13). He also

contends that the reports he submitted to the Government were vital, and not unrequired as claimed

by the Defendant.

14

However, these contentions about job performance do nothing to refute the Defendant's

position that the Plaintiff, *though performing satisfactorily*, was fired based on a financial

rationale. The Defendant readily concedes that the Plaintiff was a good employee, and the

Plaintiff's proffer of evidence in support of that proposition does not refute that his job was

redundant or that the Defendant was looking for ways to cut costs.

Aside from these job performance arguments, the Plaintiff merely relies upon conclusory

allegations in attempting to prove pretext. He states that "he was really let go because of his age

and making too much money." (Pl.'s Resp. at 11). He contends that there exists "circumstantial

evidence undermining Aero's crediblity."(Pl.'s Resp. at 11).   However, these allegations suffer

from the same problem as much of the Plaintiff's case—they are not supported by evidence in the

record. Because the Plaintiff has not proved that the Defendant's decision to terminate the Plaintiff

was pretextual, the Court finds this reason an alternate basis on which to grant summary judgment

in favor of the Defendant.


**CONCLUSION**

For the foregoing reasons, the Defendant's Motion for Summary Judgment [DE 17] is

GRANTED. The Clerk is directed to enter judgment in favor of the Defendant and against the

Plaintiff.


SO ORDERED on June 30, 2010.

                                        s/ Theresa L. Springmann
                                    THERESA L. SPRINGMANN
                                    UNITED STATES DISTRICT COURT

# FORT WAYNE DIVISION